Tlie opinion, of tlie Court was delivered by
Todd, J.
Tlie defendant was indicted for larceny, and after trial and conviction, was sentenced to work upon tbe streets of Monroe for sixty days, and to pay costs, and in default of their payment, was condemned to work twenty days longer. From this sentence she has appealed.
1- Tbe accused first complains of the action of tbe Judge who presided at tbe trial, in interrogating a witness, after tbe examination of sncli witness on tbe part of the State and defense, bad closed.
The accused ivas charged with stealing a mirror, and the point in question will be more fully understood by the statement, with reference thereto, contained in a bill of exceptions in tbe record, as follows :
“ During tbe trial of this case in the court below, and a recess of court for dinner, eounsel for the accused bad procured a mirror or glass similar in appearance to tbe one alleged to have been stolen, and after cutting off tbe string from tlie glass charged to have been stolen, by which some of tbe witnesses bad referred as their means of proving identity, and having made a bole in tbe one procured similar to a hole iu tbe one alleged to have been stolen, in order to test tbe accuracy of witnesses’ testimony, placed both glasses on a table before tbe witness *944 and proceeded to interrogate her. The testimony of the witness, in reference to the glasses, left it in doubt in the mind of the court to which glass she referred, and the court asked the witness to designate which of the two glasses she referred to in a statement she made in her testimony.”
The manner in which this matter has been argued by the defendant’s counsel might lead to the conclusion that the question involved was the right of the District Judge presiding at the trial of a criminal case, to examine and cross-examine the witnesses, with a view to procure the conviction of the accused, or at least to assist the State in the prosecution.
Wo do not so construe the issue presented by the bill of exceptions, or infer therefrom that such power or authority was claimed for the Judge, either by himself or by the officer conducting the prosecution. To ús it appears that the simple question raised was whether, under the law, the District Judge was entitled to be informed fully of the facts developed on the trial of a criminal case, and with a view to solicit such information, whether he has the right toquestion awitness who has testified or who is testifying at such trial. What else can we infer from the statement of the Judge that he did not understand, from the answers of the witness, to which of the two glasses before her at the time she referred; that there was a doubt in his mind, and he desired to ascertain the meaning of the witness as to which of the two mirrors she referred to 9
That the Judge has the right to join in the prosecution of one on trial before him or assist in his defense, is not asserted in this case, and we presume will never be contended for in any case, nor is it the least probable that the assumption of such authority by any Judge, under any circumstances, would ever be countenanced by any court, but that the Judge presiding at the trial of a criminal case, has the right to know what is going on before him, and what are the facts proved by the witnesses, we have no doubt. It is not only his right, but it is his duty to be thus informed. With out such kno wledge, he is n ot really competent to discharge the grave duties devolving upon him as presiding Judge. I-Iow, for instance, can he decide intelligently the many complicated and mixed questions of law and fact that arise in every such trial, or are likely to arise, without such knowledge ? How decide whether the verdict is contrary to the law and the evidence, a question involved in nearly every motion for a new trial, if he is not thoroughly conversant with the evidence that has been adduced at the trial, and understands fully what the several witnesses have testified ? If such are his duties and responsibilities, then it necessarily follows that he has the right to interrogate the witnesses, to the extent atleast *945 of knowing and understanding what they say, and what they mean, and. to shape his questions so asbest to remove all doubt as to their statements and reach the true meaning of the same.
This is all that we are now called on, under our construction of the issue really presented, to decide. We have been directed to no law, and know of none, that would deprive the Judge of such right or authority, and the exercise of this right for the purpose, and under the restrictions stated, we do not conceive trenches upon any provision, constitutional or legal, forbidding his commenting before the jury on the facts proved, or sanctions, in the remotest degree, any word or action on the Judge’s part, looking to his co-operation with either party, or to his assisting either the prosecution or the defense.
2. The next error assigned relates to the right of the Judge to change the sentence against the prisoner, as first pronounced and rendered.
The first sentence passed in this case was imprisonment in the parish jail for sixty days, “ with the privilege of compensating the-same by work on the- public streets at one dollar per day, and pay costs, and in default of paying costs, to be imprisoned for twenty days more.” Suggestion having been made by the District Attorney that this sentence was not in accordance with Act 38 of 1878, the prisoner was recalled and the original sentence modified, to the effect that the accused was condemned, quoting from the record, to work on the public works and streets of Monroe for sixty days, and pay costs, and in default of such payment, to work twenty days longer on the streets.” This amendment or modification was made immediately after the first sentence was passed. The right of the Judge thus to amend or modify a sentence is settled by the highest authority. Tlius, Wharton on this point says:
“Asa general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, and it has been said that even during subsequent sessions down to the period of the execution of the sentence, the court may further amend or stay proceedings or respite,” et seq. Wliar. Crim. PI. and Pr., Sec. 913.
And again : “ Where the court, in passing sentence, has overlooked a requirement of the Statute, it may correct the judgment at the same term, before the sheriff has executed it, by vacating the first sentence and passing a new one.” Miller vs. Finkle, 1 Parker, 374; Drew vs. Com., 1 Wharton, 279; People vs. Thompson, 4 Cal. 238.
There was, therefore, no error in this respect.
3. The next and last assignment made, is to that part of the sentence above quoted, which condemns the accused to twenty additional days *946 labor, in default of paying the costs of the prosecution. It is objected to, on the ground that there is no law authorizing imprisonment for the non-payment of costs.
Costs in criminal cases, under a statutory provision, follow or attend a conviction. Thus, Rev. Statutes, Sec. 979, declares : “ Every judgment of conviction shall subject the person convicted to the payment of all costs of the prosecution, whether so stated in the sentence or not.” They may, therefore, be likened to the costs that fall upon the unsuccessful suitor in a civil case. C. P. 551.
They cannot, therefore, be viewed as a fine, which is a sum expressly imposed in lieu of, or in addition to a term of imprisonment, or as any part of the punishment for an offense. They are merely a debt, whether in criminal or civil cases, resulting from the operation of the laws condemning the. party cast to pay the expenses of the proceeding.
See. 980 R. S., provides, “ that every person sentenced to pay a fine shall, in default of payment, be sentenced to be imprisoned, etc.”
.The accused was prosecuted for larceny. The penalty for such offeuse was originally, imprisonment at hard labor, or otherwise, not exceeding two years. R. S. 812.
A fine could not, and cannot still be imposed as part of the punishment for sucli offense.
Sec. 1 of Act No. 38 of 1878, under which the accused was sentenced, provides a different mode of punishment for larceny and other offenses, and roads as follows :
“ That in all criminal prosecutions, where any person is convicted in any of the courts of this State of any crime or offense punishable under the law with imprisonment at hard labor, but not necessarily so, the Judge before whom such conviction is had, may sentence the person so convicted to work on the public works, roa ds, or streets of the parish or city in which the crime or offense has been committed, and which may .be eventually chargeable with the costs of the prosecution, and for a term not exceeding the term now specified under existing laws ; provided, that when afine, in said cases, is imposed as a part of the penalty, in default of the payment of such fine and the costs, the Judge may enforce the liquidation thereof by sentence of additional labor, at the rate of one dollar per diem.”
It will appear from the above, that it is only when a fine is imposed and there is a default of payment of the fine and the costs, that additional labor can be imposed in lieu either of the fine or the costs. And by a fair and reasonable construction of the Section, the additional labor authorized to be imposed might be intended for the enforcement of the fine and not the costs. However this may be, it is reasonably certain that before this further punishment of additional labor can be inflicted *947 for fine or costs, a fine must have been imposed as the penalty or part of the penalty for the crime.
In this case it was not so imposed. Tliere was no fine, but the sole punishment for the offense was sixty days’ labor on the streets. Added to this, no fine for larceny could, under the law, have been imposed as above stated. It, therefore, follows that under no law applicable to this case could the accused be condemned to additional labor, exclusively to pay the costs of the prosecution.
This part of the sentence is, therefore, illegal, and should be vacated. This, however, does not avoid the entire sentence. That part of it that inflicts the punishment for the crime of which the accused was convicted, must remain intact. The illegality of one part of the sentence does not vitiate the entire sentence. Matter of Sweatman, 1 Cow. 144; Brown vs. State, 8 Eng. 96; State vs. Chapman, 34 An., not yet- reported.
Hence, there is no necessity for remanding the case that the accused may be re-sentenced.
The correction can now be made.
It is, therefore, ordered, adjudged "and decreed, that the judgment and sentence appealed from be amended, by striking therefrom that part which imposes twenty days additional labor by the accused on the public works and streets of Monroe, in default of paying the costs of prosecution, and as thus corrected and amended, the said judgment and sentence is affirmed, the costs of appeal to be paid by the appellee.